Okay, we're now ready to hear 21-4099 Preventive Energy Solutions v. nCap Ventures. May it please the Court, Paul Jones for Plano Propellant, Preventive Energy Solutions. This case concerns basically Principal Kevin Olson of Preventive and some parties titled nCap Ventures 5, nCap Ventures 11, Mr. Anthony Cetera and Mr. Rhett Spencer. At the time these parties kind of got together, they believed that they were going to have a product to sell door-to-door that was basically a battery recharging system. It would be powered from the sun through a photovoltaic solar system. It would capture that energy and be able to power things in the home like a refrigerator, perhaps a heat furnace, things like that. Many representations were made to Mr. Olson prior to entering into a contract. We refer to it as the MSA. However, in that contract, the parties were supposed to agree upon product specifications. That portion of the agreement was not filled in. It was basically said we've got to agree to agree eventually. What do you do with an agreement to agree when you have a merger clause like there was here on the agreement? Plano Preventive would say the representations made by the nCap parties were fraudulent. Under Utah law, an integration clause is not enforceable when fraud is made. One point that we make in our brief is that that was an error that the trial court made by not allowing those issues, those representations to be tried as fraudulent representations to the jury. In other words, that's a factual determination and a highly intensive one, frankly. That wasn't allowed to be presented to the jury. What happens is that only six days prior to trial, I'm ruling on a motion in limine. The trial court ruled that all tort claims were barred by the economic loss rule, citing the health bank case. That is the principle reason that appellants appeal. In Utah, the health bank case, the law basically starts out by describing what the status of the economic loss rule is in Utah. It talks about distinct branches where there is a contract, where there is not a contract. In this case, there was the MSA. The trial court ends up saying, or at least I think we all agree on the legal point that you've got to have on the first element to show that the economic loss rule would bar tort claims. You would have to show that there's an independent legal duty. The second thing that you have to show is that those duties overlap in the contract. This is the substance of what we argue is the error in this case that should be reversed. The trial court basically said, because of this integration clause, there is other language in the contract that says you've disclaimed all warranties about the product. Well, the problem is the product was never agreed upon. It was fraudulently represented as to what it would be, what it is. Are you saying that by that argument, are you saying there was no contract, or there was a contract, but it was not enforceable because it was illusory? Which one are you saying? Under Utah law, if a contract is induced by fraud, it can be voidable at the election. And you chose the other direction. You chose to say it's valid for the purpose of this trial. We said there was a contract. We initially stipulated there was a contract, but our argument was that it would be voidable because it was induced by fraud. Did you say that when you entered into the stipulation in the presence of the district court? That we're going to stipulate it's valid, but I still think it's voidable. Did you say that? I believe so. I believe we did because, again, we premised our argument on, or excuse me, all our causes of action were fraud. Those were known causes of action. Those were argued. The complaint had fraud causes of action. It's very clear that fraud was at issue. Let me ask you this. If at the time you stipulated with the district court, you did not reserve your voidable argument, then do you lose on trying to resurrect your theory or trying to get around your stipulation? Well, no, because we have an election of remedies, right? We are still pursuing a reform act. No, no. This is my question. I asked you if you said, at the time you entered into the stipulation, if you told the court that it was still voidable and you had that option. And I'm asking you, if you didn't say that, are you stuck with the trial that you had on the MSA? Well, the ruling was made to take out the fraud claims. So the stipulation was made when we were doing jury instruction. So opposing counsel and I, you know, do as you do, call each other on the phone, and we agreed that there was a contract. So the stipulation— Well, that was a valid contract. Sure. It was a valid contract. Well, a valid contract isn't voidable, is it? It is. If it's induced by fraud, it is voidable. But I don't see how you can stipulate that a contract is valid and still say it's voidable. That would seem inconsistent. Because it's an election of remedies, right? So I can say— Okay. And is that anywhere in the record that you said that? In our jury instructions that were submitted. No, no. In the stipulation that you had in the colloquy report, did you stipulate to its validity but then said, but it's voidable? I believe at the very outset of the trial— I'm not talking about— Wait a minute. I'm talking about the colloquy you had with the district court on the nature of your stipulation. There's no jury present or anything. In fact, I don't even think the trial started. That's correct. At that time, when you entered into that stipulation and you engaged with the district court and opposing counsel, you said the contract was valid. In that same colloquy, did you say, but it's voidable? Well, in my memory, we had a discussion, and Judge Bennett said, no, as a factual matter, we're stipulating that it's a valid contract. He brought up—there is a discussion about the nature of it being illusory or not, and he prevented me from making that argument, yes. But, I mean, I'd have to go back and review that. I don't have that off the top of my head, but I believe we did have a discussion about that nature, yes. But the context really, at least as I understood it, the context of your stipulation as it relates to this contract being valid was simply the notion that it was not in agreement to agree. In other words, that there was a contract, but at least I take it your argument is that doesn't impact the question whether it's a voidable contract. The contract existed in the sense that it's not in agreement to agree, but it is nevertheless voidable. Correct. That's your argument, right? That's correct. Okay, well, playing that logic out, though, isn't the problem that once you have a contract, the district court said, well, yes, there's a contract, and the economic loss rule ends up barring the contentions you wanted to make to establish the voidability of this contract. In other words, the tort claims fall because the economic loss rule, its operation, deems that to be appropriate. Right. That is how that— Okay, well— I agree. On the question of the merger clause, that seemed to me to be a last part of the district court's analysis. The district court's analysis, as I understood it, turned on the fact that the subjects of the claims of fraud were incorporated in that contract, the deemed valid contract, and under health bank, that's all that was necessary. You didn't have to have term for term correlation of fraudulent representation, term, and contract. It was enough that the subjects of the fraudulent representation were in the contract. Yeah, health bank refers to just grounds. Grounds. Grounds, right. I would disagree that they're in the contract, though, and it gets into the contract, or the subject matter gets in it only through the integration clause. At least that's my reading of the district court's ruling, and the reason is because they're saying, well, you're disclaiming— and I'm going to use an extreme example, right? The district court is basically saying, you're disclaiming what the product is going to do, that it's capable of working, and by that logic, it removes the good faith and fair dealing from an inherent aspect of the contract, because it's like it would be the same as saying, well, I've just got some random object. I'm going to take these papers, and I'm going to deliver it under the MSA, and because you disclaimed, that's okay. It doesn't matter what I delivered. Just disclaiming, meaning the merger clause. Right. Well, but does it have to turn on the operation of the merger clause, because if it—yes, I'll use the word grounds. I thought I'd refer to subject matter someplace, but let's just take grounds. If the grounds of, I guess, 4A, 7B, something like that, if the grounds of those provisions related to the fraudulent representations, and the court said that the reason there wasn't content in 4A, or the product, was that in itself is a product creature of the contract. I mean, because you had an obligation to negotiate. You didn't negotiate. That in itself is baked into the contract. Therefore, there is no basis for you to bring these allegations. So I guess the point I'm getting at, and I want your reaction to, is it would seem to be quite apart from the merger clause language. One could say that the operation of health bank would result in the economic laws rule applying. Well, I bring that because that's how I read the district court's opinion. But to go direct to your question, the issues that are raised, those grounds, they're not in the contract. And you can read them in the brief, what they're specified. And they're generalized by both parties as product makeup, or I think we call them product readiness, and then product specifications. What the product actually is, well, those don't appear. No, they don't. But the court reasons, well, first question, do you accept those categorizations? I think they were product readiness, product, and product, whatever the other one was. The court classified what would be the nature of the representations. Okay, well, if you accept those classes, then the court said, as I understood it, that it's not enough to say that the exact substance of those classes is not in the contract to take this out of the realm of contract. Because the contract contemplated, you would put stuff in there. And therefore, it continues to be a contractual matter, because the absence of the stuff is itself a product of the contract. And that is what I'm getting at by, that's my silly example, my extreme example, is that I think that logic takes out the ability to have good faith and fair dealing in a contract. Because if you're just saying, well, forget what the product actually is intended to be between the parties that you're going to make it up, I can literally deliver this stack of papers and it's going to be okay. Even though, in my mind, I would say, well, you've been telling me the whole time that you're going to have this world-class battery recharging system that's going to have all the bells and whistles and do all these marvelous things. That was a fraudulent representation. But would it be okay, or you just would have to sue under the contract? I mean, I don't think anyone's saying that somebody walks away scot-free here. We're just saying that you're limited to contractual remedies. That's the answer. Well, but Utah law doesn't reconcile how these other cases deal with that issue. Because they basically say, look, you can't disclaim things if you've made fraudulent representations. Those representations were never presented to the jury as whether they could be fraudulent or not. They instead were decided at the trial court level, outside of the presence of the jury, to just say the economic loss rule is going to bar those. I know you're out of time, but if I could just follow up on your hypothetical for a second. Sure. On your hypothetical, why couldn't that have been the basis? If they had submitted to you, or if submitted were lousy plans, I mean plans that just were deficient fundamentally, why couldn't the contractual party sue over that? Why couldn't you have said, no, this isn't what we agreed to, and I'm suing because under the contract, the contract itself contemplated a product that worked? Well, it didn't, though. I mean, there was this disclaimer, right, to say we're disclaiming the fitness for a particular purpose, for example. But the idea, though, is that, I guess this is how I would answer that, is that if you're going to just deliver the horrible stack of papers, right, that is not what was contemplated and intended by the parties to go forward in their business relationship, right? And so you have a fundamental issue, and I'll go back to HealthBank for just a second to draw off this. HealthBank says the representation that's at issue is ownership of the green solution or whatever it is, and they say that's in the contract. And so they say you're going to sue on that to cover that specific basis. Well, you're talking about something where there's an idea that is literally not in the contract, that both sides can't, you know, they're going to argue, well, this is what you contemplated. The other side's going to argue, that's not what I contemplated at all. We didn't contemplate it, and the jury is the one that should have decided whether those representations made up, you know, enough to be fraudulent to operate under Utah law, which are still good cases, to take those contract provisions out because they were induced by fraud. And then why doesn't that become just a question of bad contracting? In other words, at the end of the day, you go to sue, and you say the economic loss rule governs this, and you say, well, you know, this isn't what we contemplated. Well, why don't you spell out in the contract what you contemplated? And if you don't do that, why aren't you subject to the consequences of that? Well, because the economic loss rule specifically requires those representations, the grounds, the substance, as we discussed at the end of the contract. Well, the question is what grounds means, though. Right, and I agree with your point on that. And our argument is specifically that, is that we believe Health Bank, you know, shows what it means to have grounds, and that's not this. It's different. Go ahead. Mr. Jones, I need to clarify one thing because of your argument. You kept hearkening to good faith and fair dealing. You've never had a good faith and fair dealing claim, have you? No, we did not, but that's inherent. But you're correct. I wanted to ask something about the economic loss rule. Is it your experience that the Utah courts, particularly the Utah Supreme Court, generally follows the restatements? Yes. Why is that? Because there's a new restatement on tort claims for economic loss. It came out in 2020, and it would sure simplify this case because there's some nuances here that haven't been addressed by the state courts. Let me just read it to you. I apologize, I'm not familiar with this. So section three, this is liability for economic harm, torts, restatement third. Except as provided elsewhere in the restatement, there is no liability in tort for economic loss caused by negligence in the performance or negotiation of a contract between the parties. That bars any negligent misrepresentation claim totally. But then it says in section nine, fraud, one who fraudulently makes a material representation of fact, opinion, intention, or law for the purpose of inducing another to act or refrain from acting is subject to liability for economic loss caused by the other's justifiable reliance on the misrepresentation. And that applies no matter what the contract provisions say on the theory that when you're negotiating a contract, you don't expect people to be defrauding you. So that would make this case rather simple. It would eliminate all your claims except intentional fraud. I agree. Well, what I'm wondering about is whether we should certify the economic loss issue in this case to the Utah Supreme Court and see if they want to clarify their law. Given what I think, and I may be wrong about this, but my impression over the years has been that the Utah Supreme Court has been pretty religious about following the restatements. I agree with that, Your Honor. And we would support such a certification. Well, we'll see. But do you have questions on that? I do have a question. Your purpose in asserting intentional misrepresentation is to render the contract invalid, correct? Yes. And you stipulated that the contract was valid, correct? We have to… upon which the case is disposed of. If you agree by your stipulation that the contract was valid, then there is a separate basis to rule in this case and to affirm without getting into the alleged fraudulent misrepresentations. Isn't that correct? I unfortunately am not prepared to answer that question. Well, you're supposed to be prepared, because that's what this case is about. I know that's on the certification question, unfortunately. Well, let's take it out of the certification context. Is a basis to resolve this case to say for this court to rule that you stipulated to the validity of this contract and therefore no alleged fraudulent misrepresentations could invalidate that and you're stuck with your stipulation without getting into your theories of why you shouldn't be stuck with it. If that's the basis of ruling, that's all we have to say, isn't it? I apologize. I'm trying to understand your Honor's question better. My question is this. Isn't it a wholly independent basis to rule in this case that you stipulated to the validity of the contract and therefore the jury verdict should be affirmed because the contract is valid and cannot be invalidated by alleged fraudulent misrepresentations? We would not go that far because we believe it could be invalidated by fraudulent misrepresentations. I could not agree with that. I understand. I apologize if I'm misunderstanding your question, but I could not accept that. My time has exceeded. Any other questions? Thank you. Thank you, Counsel. Can you tell us what the language of the stipulation was? Yes, I absolutely can. And I'll point the court to the record on that. It's actually cited in our... Could you... I just have about four lines that I read. And can you give us the transcript and read about... If you'll permit me. Yes. Thanks. Wait, the four lines. Yes. There may be pieces. There's more. While I'm looking it up, I'll just note that there was a prior stipulation as well that occurred on June 28th of 2021. And it was in that circumstance in which the appellant stipulated that because there was a valid contract, the equitable claims would be dismissed. Okay, all right. So that... That was pursuant to Judge Warner's ruling. No, that was just pretrial in front of Judge Warner. But it was as a result of Judge Warner's ruling that those two equitable claims were gone. That's correct. All right. That's right. Let me pull up the transcript. You're now talking about the July 7th one? That's correct. Okay. That's right. I think we're just... I want the language of the stipulation, the engagement between the court and counsel, and the stipulation that the contract will be deemed valid in the submission to the jury. Sure. And I'm looking at page 333 of the appendix. Now that I'm looking at 333, that's not exactly... We'll find it if it's that. We don't want to consume all your time. Well, we won't count this. I'd like to have it. I appreciate that. Okay, well let me start here. I actually found it. Page 337. Here is what the appellant's counsel... Okay, give me the site. Yes, it is the appendix, page 337, beginning on line 13. Is there a volume of the appendix? It is volume 2, I believe. Thank you. All right, 337. Yeah, the appendix is consecutive. Here is what it said. Appellant's counsel says, And I fear, Your Honor, that what this is, what the court is dealing with today, you know, the NCAP parties or the preventive parties, got the court's ruling yesterday on the economic loss rule. And they're looking for a theory that can stick. And that, you know, I think we've heard this is rather reactive to the ruling of yesterday, and that just is not the appropriate timing or the appropriate justification. I'm sorry, that's me. Oh, man. It's okay. Dear. Okay. Here it is. I think this is right. Page 338, same volume, line 14. Appellant's counsel speaking. And so the specific issue is that if, you know, for example, this court were to rule that as a matter of law, this is an enforceable contract, the preventive parties would be satisfied with that and would proceed. I'm sorry, if you were to rule that this is a what? Just write as it says. If you know, for example, this court were to rule that as a matter of law, this is an enforceable contract. Okay. More than valid. The preventive parties would be satisfied with that and would proceed, and this would not be, frankly, an issue. So I will just state that. The court then goes on to speak here. And then on page 339, line 7, Judge Bennett says, but it seems to me, Mr. Jones and Mr. Brough, that what we're talking about, if the parties are going to stipulate this is a binding contract, that it seems to me that if that's the stipulation and that's a fact we can tell the jury, then that, it seems that this whole illusory business is just not, it won't be an issue. I mean, does anyone see it different? Appellant's counsel responds, I'm satisfied with that. If the court is willing to make that ruling, I'm perfectly satisfied with that. Appellee's agreed as well. But the context of this conversation is over the question of whether the agreement is unenforceable because it is an agreement to agree. Right? That's a good question. I don't know that I agree with that. And tell me your basis for not agreeing with it, because I'm looking at what the court's saying, talking on page 330. So the email that chambers received was to say that even though that we say that there would be unenforceable simply because it's an agreement to agree as opposed to an actual enforceable provision of the contract. That's the court talking. And the court used the word illusory in the passage that you were talking about. So what other basis are we talking about that it was unenforceable in the context of this discussion? Before you answer, take a moment to think. Amy, would you set it for 12 minutes? I think that'll take care of the time. Just reset that. Reset so it's 12 minutes. We'll just figure it out. Well, I thought this would help me. Okay. I'm sorry. Yeah, okay. Your Honor is correct. That is the context in which that statement was made, and that's the only context in which that statement was made. Parties were talking about it being illusory there. My point, the way I answered the question, the way that I did it was simply to say, I don't know that you can stipulate that a contract is valid or binding or enforceable for some purposes but not for others. Well, maybe not. But that was the context in which it was done here. So there's an apples and oranges thing that seems to be going on here because, as I understand opposing counsel, I'm stipulating that this contract is valid and enforceable in the sense that it is not an agreement to agree but I am still, as I understand his argument, taking the position that it's voidable because of fraud. And does Utah law allow, that's what I'm asking you now, does Utah law allow for an otherwise binding contract to be voided for fraudulent misrepresentation? The answer to that question is yes, Your Honor. Okay. Then why isn't that a logical position to take, that this contract is binding, this contract is valid, this contract is enforceable in the sense that it is not an agreement to agree but I nevertheless claim that it is voidable? That is a position that one could take. All right. Absolutely. That's true. That wasn't stated on the record as to what the stipulation was to be. But that is a position that one could hypothetically take, yes. It is true that under Utah law an otherwise enforceable contract, and by enforceable I mean the parties met with their minds on the material terms. Sure, that contract could be voided for fraud. Yes, it could. But I don't think that's what was stipulated here in fact in the court because that clarification wasn't made. That's a very decent concession you made. It still surprises me that you could stipulate that a contract is enforceable but we can set it aside. But if you say that's the law. I didn't think you said that. No, what I'm saying. I'm sorry. Oh, then let me get this. Well, maybe I misunderstood you. Okay, I thought you said that it would be okay just to agree that this is an enforceable contract but still argue that it could be set aside for fraudulent misrepresentation. Well, and this is the mind-bending nature of the terms that were used in the stipulation, I suppose. I think what I'm trying to convey to the court is you can have a contract that represents a meeting of the minds as to the essential terms of the contract. Sure. You can try to avoid that contract for fraud. Okay. Once that contract is avoided, though, it is not binding or enforceable. I think that's a clear statement of Utah law. Okay. In fact, I think there's Utah case law that says the fraud actually undermines the nature of the meeting of the minds because you can't have a meeting of the minds if it was induced by fraud. Okay. So maybe I got caught up in the current. Well, I may have misunderstood you. No. Yeah, so not at all. And that's why I harken on the point that that's just not what the stipulation was. The stipulation in court was not, whoa, yeah, we're going to agree that there was a meeting of the minds here. We're going to agree that there was an offer of acceptance consideration. We're going to invalidate this sucker based on fraud. That wasn't the stipulation. Well, that's not what was said, but you disagreed that the context of the conversation was whether the contract was illusory or whether it was an agreement to agree. So they could have been more articulate. They could have said more. But that was the context of what we were talking about here, right? That's true. I mean, that is the nature of it. We're going to have to check the record ourselves, of course, but was there any mention of, I forgot the term. Voidable. Yeah, that might be, yes, voidable. Was there any mention that it might be voidable? No. Okay, thank you again. Boy, you're a right-hand man today. No, there was not. And so beginning with that, and I'm actually grateful that we began with this point, really I suppose we're responding to Judge Murphy's last question to appellant's counsel, which is, hey, if we find that there was a stipulation, does that just end things? I think the answer to that question is yes, it does. But nonetheless, even if there's no stipulation in that manner, if we present a very brief number of other reasons why the court should affirm. What role does this merger clause play in the district court's analysis as it relates to the application of the economic loss rule in your view? In other words, what I understood opposing counsel to say is it was, in some sense, essential to it in his reading of the district court's analysis. What's your view? I would like to say that everything that goes into a district court opinion is essential. Candidly, I don't think that that was the most essential part of the court's analysis. The way that I read the district court's analysis is there is a contract. The contract does have a representation that the parties will mutually agree on product specifications to be determined. However, if preventive, the appellant, doesn't work to mutually agree on product specifications, then preventive effectively can torpedo its own contract and preserve for itself tort remedies. It would seem strange to incentivize a breach of this agreement in that way. Keep in mind, and I'll be careful how I talk about the context of this, in the context of talking about equitable remedies, the parties would already agree that there was a contract. That was the premise of what Judge Bennett was talking about. With that foundation, the way that I read the ruling is Judge Bennett says there is a contract. I'm looking at all of the representations. Let's assume they're all true. Let's assume that they were all made. Every one of those representations falls either into the category of product specification or production readiness. Every one of them. What about the alleged misrepresentations that we're selling this all over the world and what they're doing now with the product? Where does that fit in those? I think it goes into the production readiness. It's a representation that the product exists and can be made once preventive develops its specifications for how this particular iteration would be created. Keep in mind that the product itself is not already made. There was never a factory of batteries and chargers. NCAP had developed technology for charging batteries for the purpose of manufacturing supply agreement was for the parties to basically get orders by which these batteries would be tied to these chargers for this scale and for this price. That's what the MSA was intended to do. Those two categories or classifications correlate to 4A and 7B of the MSA. Essentially, they begin to drive, they drive the train for the application of the economic law school. Exactly. That's right. This is the contract for the manufacture of a product. All of the representations are talking about the product. Now, for example, to Judge Hart's question, if preventive wanted, we want a product that's being sold in all these third world countries. If it wanted that to be a product specification, the agreement actually, I don't think it is a product specification, but the agreement sets forth a procedure by which the parties would work together to make that the product specification. And then if that product wasn't delivered, then that would be a breach of the contract. Well, what was missing was the list of product specifications. Right. And I think you have a good argument that under prior law, at least, that means we're not representing anything about the specifications of the product. But I don't think that the allegations, I'd like to hear your response before I think anything. One of the allegations was that NCAP said it had a system that no one else does. And another was that the system was already in use outside the U.S. Tell me how you would, what language, why that's barred by what's in the contract, how you would protect yourself against that in the contract. You wouldn't ordinarily say, I want this product and you'll have it ready by this time and it will meet these specifications. How are you protecting yourself against the representation made to you when you entered into the contract, when you paid the half a million dollars? To me, that's the important point in time. How are you protected against those false statements, that it's already used outside the U.S. and it's a unique product? I think you're protected in at least one of two ways. One, if you're preventive and it's material to you, it's important to you that I am in fact getting a product that is used in other countries, then you put in the contract, I want the product that is used in other countries. Now, it's humorous a little bit for me to say because that is not a product specification that anybody's going to want. When you're preventive, you want something that works in accordance with... You don't put that in because you just assume the guy's telling you the truth about that. Well, if he's not telling the truth about what the product can do, that manifests itself in whether the product actually delivered meets or doesn't meet the product specifications. No, no it doesn't. It may meet every specification, but it's not unique and it wasn't used anywhere beforehand. It wasn't used outside the U.S. Everything you put in there about what the product looks like, and where that's important, and we haven't really made this distinction before, but before they produced the contract, preventive had already given half a million dollars. If they were defrauded into advancing the half a million dollars, why is that still not a claim even with the contract later? Because the contract talks about to the extent you don't build anything, you don't produce any product for preventive, then they get their half a million dollars back. And apparently the reason they didn't get the half a million dollars back is because there was a finding that preventive had breached the contract. But there ought to be some protection against... There ought to be some claim, tell me why there shouldn't be, based on the fact that earlier in their dealings, preventive had turned over half a million dollars, which it says was paid as a result of fraudulent representations by the defendant. I see that I'm out of time. May I answer your Honor's question? I might do it in a somewhat roundabout way if you'll bear with me for five seconds. What the health bank decision stands for, and I think what the fundamental foundation of the economic loss rule is, is parties are free to negotiate among themselves the remedies that they want to have, and so we give precedence, if you will, to the contract. One example, and I'm pulling this from the KTM case that was cited in the Ennis case, that's not too far back. The citation itself, I can give you a reference, is 436p2, 151. That was a case where a nursing home and a pharmacy entered into an exclusivity agreement. Pharmacy was going to furnish all of the medicine that the nursing home needed. Nursing home sued for fraud. I'm sorry, pharmacy sued for fraud. In that case, though, nursing home's representations were nothing more than that we're going to adhere to in terms of our contract. But there's a footnote 19 in that where the court kind of gives an example of what would be outside of the economic loss rule's purview. And the example was this. Let's say pharmacy tells nursing home, this agreement's only going to work for us financially if you have at least 200 patients in-house. And the nursing home falsely says, oh, we do, but it doesn't. That is outside of the exclusivity, because it doesn't relate to a term or a performance. It would induce somebody to enter into the contract. I think, and I apologize for being around the block on this, I think what you're driving at is, well, you can say all kinds of things about the product, what the product is, where it's used, what it does, whatever, and let's assume that they're false. How do I end up prevailing on a claim for damages, even under fraud? Well, I've got to look at what I actually bargained for, what's actually given to me works, or whether it meets the specifications. And that's why I say if you are bargaining for a product that's used in foreign countries or does this or that, and that's what you want, well, health bank, I think, would say you have the obligation to put that in your product specifications, which indisputably you have in this agreement. Why can't you put it in just a whereas clause? You can put it there, too. Absolutely. You can put it anywhere you want in the contract. In fact, that's why the health bank case actually applied the economic loss rule, is because the representation was included in a recital. I think that's what health bank would say about that. You have the ability to contract, and if it's important to you, well, you have your contract. We're not talking about something that's completely extraneous to the party's performance of their obligations under that contract. So in this case, I take it you would say that if there was an allegation of a misrepresentation of the quantity of production that could be had, that's different than the ins and outs and definitions of the product. And so that would not be rendered out of bounds by the economic loss theory. Unless the contract specifies what the production could be, and I believe in this case production is going to be handled in a 30-day window ahead of time where a projection is going to be made, then orders, then delivery time based on what's actually in the purchase orders. But Your Honor's point is correct with those caveats. If the representation is, for example, we have a million dollars in our bank, and that just turns out not to be true, and it ends up that that's not in the contract, well, that might induce somebody to enter into the contract. That could be fraud. In the point of your example, the hypothetical, and I'm going to benefit from looking at that in the footnote, but the point of that is essentially that in the pharmacy nursing home situation, it really had nothing to do with the guts of what the transaction was going to be, drugs to pharmacy. It had to do with basically the context in which that deal got done and the inducement to do the deal, but then the contract itself related to a separate subject matter. Exactly. Okay. Exactly right. Unless the Court has any other questions, I'll conclude by asking the Court to affirm. You look like you may have a question. And thank you for that Court's indulgence as I went through the transcripts. Thank you. Case is submitted. Counselor excused.